**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antonio Atencia, | No. CV-19-05855-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Maricopa County Sheriff's Office, et al., | |
| Defendants. | |

Plaintiff Antonio Luis Atencia-Salome ("Atencia") is a detention officer employed by the Maricopa County Sheriff's Office ("MCSO") who brought suit alleging race discrimination in employment after he was denied a promotion. (Doc. 10 at 6-11). Atencia asserts claims against Defendants MCSO and Maricopa County Sheriff Paul Penzone for disparate treatment and retaliation in violation of Title VII and a claim against two MCSO Chiefs, Defendants Barry Roska and Russ Skinner, under 42 U.S.C. § 1983 for violation of the Equal Protection Clause. (Doc. 10 at 13-17).

Defendants moved for summary judgment. (Doc. 89). They contend Atencia's disciplinary record rendered him ineligible for promotion and race did not play a role in the decision not to promote him. (Doc. 89 at 16). Defendants claim MCSO Policy GC-12 ("Policy GC-12") precludes promotion for persons with more than three sustained disciplinary violations. (Doc. 89 at 6-7). In response, Atencia notes he received racist text messages from coworkers, the MCSO has made exceptions to Policy GC-12 in the past, and the MCSO has promoted others with similar disciplinary records. (Doc. 91 at 13-15).

After Defendants replied (Doc. 93), Atencia moved to strike portions of Defendants' reply.  (Doc. 95).  Defendants argue the motion to strike was procedurally improper and that the challenged portions should not be struck.  (Doc. 96).

The Motion for Summary Judgment (Doc. 89) will be granted in part and the Motion to Strike (Doc. 95) will be granted in full.

## BACKGROUND

At summary judgment, the Court considers only admissible evidence, *see* Fed. R. Civ. P. 56(c)(1)(B), and does not weigh evidence or determine credibility.  *House v. Bell*, 574 U.S. 518, 559–560 (2006).  Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  All facts set forth below are undisputed unless otherwise noted.

Atencia is a detention officer employed by the MCSO who identifies as Black and Hispanic and is of Caribbean and South American national origin.  (Doc. 10 at 6).

From 2011 to 2019, Atencia applied for promotion many times (Doc. 89 at 6), and filed this suit in 2019 after he was denied a promotion to sergeant.  (Doc. 91 at 2).  The MCSO claims Atencia was denied promotion because Policy GC-12 prohibits promotion of persons who have three or more "sustained"[1] disciplinary violations, or one especially serious, "Category 6," disciplinary violation,[2] within the preceding decade.  (Doc. 90 at 4).  Atencia had four sustained violations, none of which were Category 6 offenses, at the time he was denied promotion.  (Doc. 90 at 1-4).  The parties dispute how to characterize Atencia's violations, and whether Policy GC-12 required denial of promotion.  *Compare* (Doc. 90 at 3) *with* (Doc. 91 at 10).  However, the facts of the underlying violations are

---

[1] MCSO investigations result in one of five findings.  From least to most serious: (1) Unfounded ("the allegation against you was false or not supported by fact"); (2) Exonerated ("an incident occurred, but that your actions were lawful and proper"); (3) Not Sustained ("there was insufficient evidence to prove or disprove the allegation against you"); (4) Partially Sustained ("a portion of the allegations against you was found to be factual"); (5) Sustained ("the allegation against you was supported by sufficient evidence to justify a reasonable conclusion of responsibility.").  (Doc. 90-2 at 97).

[2] Disciplinary violations are measured on a scale from 1 (lowest) to 7 (the highest).  (Doc. 90-2 at 188).  The parties have not defined, and have not offered evidence that defines, what conduct would warrant a Category 6 disciplinary violation.  *But see* (Doc. 90-2 at 188-89) (providing Category 6 offenses receive a range of punishments, with a 40-hour suspension as the minimum punishment, and dismissal as the maximum).

1    undisputed.

2         Around October 2015, internal investigation IA 15-0825 was opened following a

3    complaint made against Atencia.  (Doc. 90 at 1-2).  Sergeant Darriel Bone was assigned to

4    investigate three allegations.  (Doc. 90-2 at 58-59).  Bone's recommendations were then

5    reviewed by more senior personnel who made the final determination. *See, e.g.*, (Doc. 90-

6    2 at 67).  The first allegation was that Atencia provided confidential information to an

7    inmate informant while investigating a potentially "compromised" prison nurse that placed

8    the integrity of an ongoing criminal investigation at risk.   (Doc. 90-2 at 58).  Sergeant

9    Bone recommended finding Atencia exonerated on the first allegation because the

10   investigation did not show the information Atencia gave to the inmate informant had a

11   negative impact on the investigation or that it was information the informant did not already

12   know. (Doc. 90-2 at 58).  The second allegation was, "Atencia made negative comments

13   to inmates regarding MCSO employees by telling [the inmate informant] that investigators

14   'fucked up' an investigation into a nurse bringing contraband into an MCSO Jail" and by

15   criticizing the way other officers handled an investigation.  (Doc. 90-2 at 59).  Bone

16   recommended  sustaining  the  second  allegation  after  Atencia  admitted  to  making

17   disparaging remarks about other officers.  (Doc. 90-2 at 59).  The third allegation was that

18   Atencia improperly fraternized "with inmates by providing the names of Detention Officers

19   to inmates to aid in possible legal action against the employees."  (Doc. 90-2 at 59).  Bone

20   recommended sustaining the third allegation because although Atencia denied that he

21   suggested taking legal action against MCSO employees, he acknowledged mentioning the

22   ACLU to an inmate and told the inmate the names of other officers.  (Doc. 90-2 at 59).

23   The preliminary recommendations—one exoneration and two sustained violations—were

24   upheld by senior personnel.  (Doc. 90-2 at 68).

25        During the investigation into IA 15-0825, Bone opened investigation IA 2016-0175

26   after Atencia indicated during an interview with Bone that Atencia may have violated an

27   order from a supervisor not to contact an inmate informant.  (Doc. 90-2 at 73).  This second

28   investigation also concerned three allegations. (Doc. 90-2 at 69).  First, "Atencia violated

an order not to contact inmate . . . on or about October 27, 2015." (Doc. 90-2 at 69). Second, "Atencia violated an order to not have inmate contact when he had a third party relay information to inmate." (Doc. 90-2 at 69). Third, "Atencia made a false statement to Administrative Investigators" when questioned about violating a directive. (Doc. 90-2 at 69). Bone found Atencia made the prohibited contact with inmates, but did not find he lied to investigators and accordingly recommended sustained violations for the first two allegations, and an exoneration for the third. (Doc. 90-2 at 90). The reviewer, Chief Deputy Don Marchand, reduced two of the allegations from "sustained" to "not sustained" and agreed that the third should be found exonerated. (Doc. 90 at 2-3). However, Marchand created and sustained a new allegation for "Failure to Meet Standards." (Doc. 90 at 2-3). Marchand said although he did not sustain two of the allegations, Atencia's "decision making is of concern to me," which warranted a new sustained allegation. (Doc. 90 at 3). Although Marchand initially recommended that Atencia receive a 16-hour suspension, his discipline was reduced to a written reprimand. (Doc. 90 at 3).

In 2017, after Atencia filed an internal complaint with the MCSO, IA 2017-0269 was opened to investigate allegations that two MCSO employees, Officer Alexander Mendez and Sergeant Isaac Perez, sent "racially and sexually discriminatory text messages to Officer Atencia." (Doc. 90-3 at 3-4). The investigation determined Mendez and Perez had repeatedly sent Atencia harassing and discriminatory text messages, permeated with slurs targeting Atencia based on race, sexuality, or his Cuban heritage. (Doc. 90-3 at 10-13, 45-50). When asked by an investigator, Mendez claimed he had used "the words 'faggot' and 'nigger' as 'terms of endearment.' Officer Atencia disputed that idea . . . Atencia said that the words were 'racist.'" (Doc. 90-3 at 43). The investigator recommended sustaining the allegations against Mendez and Perez. (Doc. 90-3 at 53-58).

But during the same investigation, "Atencia was also found to have sent questionable text messages" allegedly in response to the persistent harassment because Atencia used terms such as "mama tranca" (which means "cock sucker" in Spanish, according to the investigator) and "nigger." (Doc. 90-3 at 12). Although the investigator

found "Atencia's texting was not severe or pervasive" because Atencia only sent offensive text messages on two occasions, the investigator nevertheless recommended sustaining the allegation against Atencia. (Doc. 90-3 at 59). Although Atencia initially received an eight-hour suspension for this violation, the suspension was later rescinded. (Doc. 90-3 at 66). The sustained violation, however, was not removed from his record. (Doc. 90-3 at 66).

Atencia thus had four sustained violations within the last decade: Two sustained violations for contacting inmates despite being told not to; Chief Marchand's "Failure to Meet Standards" violation; and the violation for sending demeaning text messages. According to Policy GC-12, this would allegedly preclude Atencia's eligibility for promotion. However, the parties agree that, from June 2017 to October 2020, ten[3] employees were promoted despite having three or more sustained violations. (Doc. 90 at 7). Five of the ten employees were minorities, three self-identified as Hispanic, one as Asian Pacific Islander, and one as Black/Not Hispanic. (Doc. 90 at 7). MCSO claims those ten employees were promoted "because either the sustained allegations did not reach the level of seriousness of Plaintiff's allegations and/or they were further removed in time." (Doc. 90 at 7). Atencia argues that the promotion of those employees despite comparable disciplinary records demonstrates MCSO's discriminatory intent. (Doc. 91 at 13). As emphasis, Atencia points out MCSO promoted a White (non-Hispanic) employee who violated Policy GC-12 in two ways—both by having three or more sustained violations and by having a Category 6 violation. (Doc. 91 at 13; Doc. 92 at 7; Doc. 90-4 at 43).

It is undisputed that the MCSO supervisors who decided not to promote Atencia, Defendants Roska and Skinner, reviewed no other documents except Atencia's Promotional Eligibility Review Packet in determining his application for promotion. (Doc.

---

[3] Atencia claims 14 employees were promoted despite violating Policy GC-12 from June 2017 to October 2020 (Doc. 92 at 8-9), which appears to be confirmed by the record. (Doc. 90-4 at 43-45). Atencia claims ten were promoted even though they, like Atencia, had three or more sustained violations; five were promoted even though they had a Category 6 violation (one person had both more than three sustained violations and a Category 6 violation). (Doc. 90-4 at 43-45). Atencia claims, of those 14 employees, eight were White non-Hispanic, four were Hispanic, one was Black non-Hispanic, and one was Asian Pacific Islander. (Doc. 90-4 at 43-45). It is for a jury to determine whether ten or fourteen employees were promoted despite violating Policy GC-12 because it is a disputed fact.

90 at 5; Doc. 92 at 7).  The record demonstrates the packet erroneously said on the first page that Atencia did not have three or more sustained allegations of misconduct, such that it appeared Policy GC-12 did not apply to Atencia.   (Doc. 90-3 at 100).  But the packet did include correct descriptions of Atencia's disciplinary investigations.  (Doc. 90-3 at 102).   Atencia also alleges he was the only prospective promotee for whom Human Resources did not complete an Employee Performance Appraisal ("EPA") for his Promotional Eligibility Review Packet.[4]  (Doc. 91 at 10).  He claims Human Resources did not do its job and that, if an EPA had been completed, it would have shown he was eligible for promotion.  (Doc. 91 at 10).  He argues this shows he "was treated arbitrarily."  (Doc. 91 at 10).

## ANALYSIS

### I.      Motion to Strike

On October 11, 2021, Atencia filed a Motion to Strike Portions of Defendants' Reply in Support of Their Motion for Summary Judgment.  (Doc. 95).  Atencia seeks to strike portions of Defendants' Reply on the grounds that Defendants failed to disclose during discovery evidence relied upon in the Reply, including a document containing MCSO diversity information and a website, Datausa.io, containing data regarding MCSO promotion rates, and that the information is immaterial and potentially unreliable.  (Doc. 95 at 2-4).  Atencia also seeks to strike, as untrue, a portion of Defendants' Reply which states, "Plaintiff did not depose anyone from human resources . . . related to why the decision was made to report that Plaintiff's [Employment Performance Appraisals] did not meet standards."  (Doc. 95 at 5).   Defendants admit the statement is false but argue Atencia's motion is procedurally improper and that the contested evidence should not be struck because the failure to disclose undisclosed evidence should be excused.  (Doc. 96 at 2-6).

Federal Rule of Civil Procedure 12(f) provides, "[t]he court may strike from a

---

[4] Atencia claims "all of [his] Employee Performance Appraisals met standards" and that MCSO erred by failing to checkoff 'yes' to Plaintiff meeting performance standards on his Promotional Eligibility Review Packet."  (Doc. 92 at 11).  Atencia has submitted several of his past EPAs to support this contention.  (Doc. 92 at 146-160).

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[5]  Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).  The decision whether to strike a pleading is within the discretion of the trial court.  *XY Skin Care & Cosmetics, LLC v. Hugo Boss USA, Inc.*, No. CV-08-1467-PHX-ROS, at *1 (D. Ariz. Aug. 4, 2009).

The motion to strike was properly filed.  Defendants argue the Local Rules require objections to evidence on a written motion to be made in a reply memorandum, and not a separate responsive memorandum.  (Doc. 96 at 2-3) (citing LRCiv 7.2(m)(2)).  Atencia filed a separate motion to strike Defendant's Reply because he was not accorded by the rules a right to respond.  *See* LRCiv 7.2, 56.1.  However, Atencia moved to strike the Reply on the ground that it is prohibited by the Federal Rules, which is permissible under LRCiv 7.2(m)(1) ("[A] motion to strike may be filed . . . if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order.").  A variety of rules prohibit making false statements to the Court, *see, e.g.*, Fed. R. Civ. P. 11(b), and Federal Rule of Civil Procedure 37(c)(1) prohibits a party to use information or witnesses they failed to disclose as required by Rule 26(a) or (e), "unless the failure was substantially justified or is harmless," or the Court elects to use an alternative form of sanction pursuant to Rule 37(c)(1)(A)-(C).  Atencia's Motion to Strike Portions of Defendants' Reply (Doc. 95) is proper because it seeks to strike part of a filing on the ground that it is prohibited not authorized by a statute, rule, or order.   The untrue statement will be struck.

Defendants argue the undisclosed evidence—a document containing MCSO diversity information and the Datausa.io webpage—should not be struck.  They argue that the MCSO diversity information should not be excluded because it "is essentially the exact

---

[5] Although a reply to a motion for summary judgment is not a pleading, *see* Fed. R. Civ. P. 7(a), the Court will consider Atencia's motion to strike Defendants' Reply as an objection to the permissibility of representations and admissibility of evidence included therein.

same information previously disclosed related to detention officers, but" includes data for MCSO as a whole, "because Plaintiff's Response implied that MCSO as a whole uses discriminatory practices" and because Defendants asked questions about state-wide demographics at a deposition.  (Doc. 96 at 4).  Defendants rely on *Biggs v. Edgecombe County Public School Board of Education*, 2020 WL 594098, No. 4:16-CV-271-D (E.D.N.C. Feb. 6, 2020), where the Eastern District of North Carolina declined to strike undisclosed evidence based on a five factor test courts within the Fourth Circuit consider in such circumstances.[6]  *See id.* at \*3.  Defendants argue their use of the Datausa.io webpage should not be struck because "the information that Plaintiff objects to is easily accessible demographic information that anyone can find online" and is not used in service of a new argument.  (Doc. 96 at 6).  The motion to strike this evidence will also be granted. The appropriate remedy for undisclosed evidence is exclusion because Defendants have failed to show the failure to disclose was "substantially justified or harmless."  *See* Fed. R. Civ. P. 37(c)(1).  It is plainly erroneous to argue non-disclosure should be excused because Plaintiffs asked one deponent a question about statewide diversity rates or because the information is available online.  Rule 26's disclosure requirements are mandatory, and Defendants have not provided sufficient justification for their failure to disclose.[7]  The Court similarly will not consider the evidence

## II.   Motion for Summary Judgment

Summary judgment may be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  Material facts are those which may affect the outcome of the case and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty*

[6] The five factors are: (1) "the surprise to the party against whom the evidence would be offered"; (2) "the ability of that party to cure the surprise"; (3) "the extent to which allowing the evidence would disrupt the trial"; (4) "the importance of the evidence"; (5) "the nondisclosing party's explanation for its failure to disclose the evidence." *Biggs*, 2020 WL 594098, at \*3 (quoting *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)).
[7] Because the Court grants the motion to strike on these grounds, it is unnecessary to address Plaintiff's argument that the Datausa.io webpage is not reliable.  (Doc. 95 at 4).

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the Court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "[T]he district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House*, 574 U.S. at 559–60.

## A.  Title VII Employment Discrimination

Atencia's first claim is that Defendants MCSO and Paul Penzone discriminated against him on the basis of his race or national origin when they did not promote him. (Doc. 10 at 13).  Defendants argue they are entitled to summary judgment on this claim because Atencia has failed to demonstrate a dispute of material fact regarding their allegedly discriminatory motivations.  (Doc. 89 at 10-12).

Title VII of the Civil Rights Act of 1964, as subsequently amended, provides in relevant part that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  A discriminatory failure to promote can constitute a violation of this provision.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Courts apply a three-part burden-shifting framework to Title VII discrimination claims under the case *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny, including *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).  "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination."  *Burdine*, 450 U.S. at 252-53.  This burden "is not onerous" and only requires plaintiff to prove he applied for an available position for which he was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.  *Id*. at 253.  A rebuttable presumption of intentional discrimination is

1   created once plaintiff demonstrates a prima facie case.  *St. Mary's Honor Ctr.*, 509 U.S. at

2   509.

3          Second, if the plaintiff proves a prima facie case, "the burden shifts to the defendant

4   'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"

5   *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802, 804).   The

6   "defendant need not persuade the court that [the adverse employment action] was actually

7   motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a

8   genuine issue of fact as to whether it discriminated against the plaintiff."  *Id.* (internal

9   citation omitted).   "'If the defendant carries this burden of production, the presumption

10  raised by the prima facie case is rebutted' and 'drops from the case.'"  *St. Mary's Honor

11  Ctr.*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 255 & n.10).

12         Third, the plaintiff must then "prove by a preponderance of the evidence that the

13  legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

14  discrimination."  *Id.*  "[A]lthough the *McDonnell Douglas* presumption shifts the burden

15  of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that

16  the defendant intentionally discriminated against the plaintiff remains at all times with the

17  plaintiff.'"  *St. Mary's Honor Ctr.*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 253)

18  (emphasis in original).

19                        **1.  Plaintiff's initial burden**

20         A plaintiff makes a prima facie case for race discrimination under Title VII if he

21  shows: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a

22  job for which the employer was seeking applicants; (iii) that, despite his qualifications, he

23  was rejected; and (iv) that, after his rejection, the position remained open and the employer

24  continued to seek applicants from persons of complainant's qualifications."  *McDonnell

25  Douglas*, 411 U.S. at 802.

26         Plaintiff demonstrated he is a racial minority as it is undisputed that he is both Black

27  and Hispanic.  (Doc. 91 at 8).

28         Although it is undisputed that Atencia applied for promotion to sergeant, the parties

- 10 -

dispute whether he was qualified.  Defendants argue that as a matter of law the frequency and severity of Atencia's disciplinary violations rendered him ineligible for promotion. (Doc. 89 at 7).  Relying on *Bahri v. Home Depot USA, Inc.*, 242 F.Supp.2d 922, 932 (D. Or. 2002), Atencia argues he was not required to show qualifying performance after he was discriminated against.  (Doc. 91 at 10-11).  He claims the triggering discrimination was that he received a sustained violation in IA 2017-0269, even though he sent only two offensive texts after receiving harassing messages over several months.[8]  (Doc. 91 at 10-11).  Atencia adds that the memorandum of Defendant Roska explaining why Atencia was not promoted said Atencia had sufficient skills to be sergeant.   (Doc. 91 at 11) (modification omitted).

A strict reading of Policy GC-12 made Atencia ineligible for promotion.  He had four sustained violations, and three is technically enough to preclude promotion.  However, it is undisputed that from June 2017 to October 2020, MCSO promoted between ten and fourteen employees who otherwise ran afoul of the promotion policy.  (Doc. 90 at 7; Doc. 92 at 8-9).  Although Defendants argue the severity and recency of Atencia's violations render him unqualified for a Policy GC-12 waiver (Doc. 90 at 7), viewing the facts in the light most favorable to Atencia, the Court finds a dispute of material fact regarding whether Atencia was qualified for promotion by exception from Policy GC-12 and whether the non-promotion was the result of discrimination.[9]

It is undisputed that Atencia was rejected for promotion and it is undisputed that other persons of different races were promoted instead of Atencia.  (Doc. 91 at 12).  Atencia thus satisfies his initial burden at summary judgment under *McDonnell Douglas* by

---

[8] The messages themselves do not constitute Title VII employment discrimination because the Ninth Circuit has held "ostracism suffered at the hands of coworkers cannot constitute an adverse employment action."  *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citation omitted).

[9] Because the Court finds Atencia has created an issue of fact regarding whether he satisfied his initial burden, the Court need not determine whether to adopt the holding of *Bahri v. Home Depot USA*, or whether Atencia has been discriminated against in a way sufficient to trigger *Bahri*, if it does apply.  *See Bahri*, 242 F.Supp.2d at 932 ("[T]his court declines to accept Home Depot's suggestion that proof of satisfactory job performance at all times is a necessary element of plaintiff's prima facie case. Instead, the plaintiff simply must establish satisfactory job performance prior to the introduction of the allegedly unlawful discrimination.") (emphasis omitted).

1    demonstrating genuine dispute of material fact regarding whether he was qualified for
2    promotion.

3                    **2.  Defendants' burden**

4            The burden shifts to Defendants to produce a legitimate, non-discriminatory reason
5    for not promoting Atencia.  Defendants contend Atencia was not eligible for promotion
6    due to the severity and recency of his sustained disciplinary violations.  (Doc. 90 at 7).
7    Defendants claim several of the persons promoted despite violating Policy GC-12 were
8    minorities, including three who were Hispanic and one who was Black.  (Doc. 90 at 7).
9    Defendants also allege Chiefs Roska and Skinner, who reviewed Atencia's promotion file,
10   were unaware of Atencia's race.[10]  (Doc. 90 at 8; Doc. 93 at 10-11).

11           These non-discriminatory explanations, taken as true, would rebut the presumption
12   created by the prima facie case of discrimination.  *St. Mary's Honor Ctr.*, 509 U.S. at 506-
13   07 (holding that, to satisfy their burden, a defendant need only "set forth, through the
14   introduction of admissible evidence, reasons for its actions which, *if believed by the trier*
15   *of fact*, would support a finding that unlawful discrimination was not the cause of the
16   employment action") (emphasis in original; citation and quotation marks omitted).

17           **3.  Atencia has demonstrated a genuine dispute of material fact**

18           The burden then shifts to Atencia to demonstrate that the non-discriminatory
19   justification proffered by Defendants "'was not the true reason for the employment
20   decision' and that race was."  *Id.* at 508 (quoting *Burdine* 450 U.S. at 256).  Atencia argues
21   Defendants' justification for his non-promotion—that he had too many recent serious
22   disciplinary violations in his file—is pretextual for three reasons.

23           First, he argues he has not committed any "serious" violation because the
24   suspensions he received in IA 15-0825 and IA 2017-0269 were reduced to a written
25   reprimand and rescinded.  (Doc. 91 at 13).  MCSO promotional policies define serious
26   misconduct as "[c]onduct that, if sustained, would result in discipline of a suspension,

27

28   _____
     [10] Atencia disputes that Roska and Skinner did not know his race.  (Doc. 91 at 9); *see also*
     *infra* n. 17.

1    demotion, or dismissal."[11]  (Doc. 92 at 5; Doc. 90-4 at 3).  Atencia points out he was not

2    suspended, demoted, or dismissed.  (Doc. 92 at 5).

3            Second, he argues "Defendants' claim that Plaintiff's alleged misconduct was too

4    recent is baseless. IA 15-0825 and 16-0175 are for events that occurred prior to November

5    2015" and the evidence shows Defendants promoted people with disciplinary histories for

6    internal investigations occurring in 2014, 2015, and 2017.  (Doc. 91 at 13).  He also claims

7    that Policy GC-12 has a 10-year window, does not treat recent violations more severely

8    (Doc. 91 at 13), and that a White employee was promoted even though that employee had

9    both four sustained allegations and a Category 6 violation within the preceding decade.

10   (Doc. 91 at 13; Doc. 92 at 7; Doc. 90-4 at 43).

11           Third, he alleges most employees denied promotions identified as Hispanic, while

12   most given promotions despite violating Policy GC-12 are White.[12]  (Doc. 91 at 13).

13           Atencia has demonstrated a genuine dispute of material fact regarding whether

14   Defendants' non-discriminatory justification is pretextual because Atencia's evidence,

15   viewed in the light most favorable to him, would refute Defendants' argument that Atencia

16   was not qualified for promotion.

17                        **B.  Title VII Retaliation**

18           Atencia's second claim is that Defendants MCSO and Paul Penzone retaliated

19   against him because he lodged internal complaints regarding the racially discriminatory

20   harassing messages he received from Mendez and Perez.  (Doc. 91 at 15).

21           Under Title VII, it is unlawful for an employer to discriminate against employees

22   because the employee "has opposed any practice made an unlawful employment practice

23   by this subchapter." 42 U.S.C. § 2000e–3(a). "In order to prevail on a claim of unlawful

24   retaliation, a plaintiff must establish (1) that he engaged in a protected activity, (2) that he

---

[11] The record does not indicate whether this definition of "serious misconduct" is related to Policy GC-12.

[12] Of the fourteen persons promoted despite violating Policy GC-12, eight were White not Hispanic, four were Hispanic, one was Asian Pacific Islander, and one was Black not Hispanic.  (Doc. 90-4 at 43-45).  Atencia offered an unobjected exhibit which purports to show that eight of eleven persons denied promotion were Hispanic and only three were White.  (Doc. 92 at 144).

suffered an adverse employment decision, and (3) that there was a causal link between plaintiff's activity and the employment decision." *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002) (citing *Hashimoto v. Dalton*, 118 F.3d 671, 679 (9th Cir. 1997)). Retaliatory non-promotion is actionable under Title VII, *see id.*, and the retaliating party need not be the entity whose allegedly discriminatory practices were opposed by the complaining party. *See Nilsson v. City of Mesa*, 503 F.3d 947, 953 n.3 (9th Cir. 2007).

It is undisputed that Atencia engaged in protected activity by filing an internal complaint with the MCSO[13] and suffered an adverse employment decision. (Doc. 89 at 13-14). Defendants, however, claim Atencia has failed to show a dispute of material fact regarding whether his protected statements caused his non-promotion. (Doc. 89 at 13-14).

Defendants claim the MCSO chose not to promote Atencia because he was unqualified, and not in retaliation for his internal complaint. They argue no causal connection can exist because MCSO denied Atencia promotion as a result of Policy GC-12 and the frequency and severity of his disciplinary violations. (Doc. 89 at 14). Atencia alleges Defendants Roska and Skinner retaliated by considering, when weighing his promotion, the disciplinary violation he received for sending demeaning text messages to Mendez and Perez in response to their harassment. (Doc. 91 at 15). The suspension was lifted for that violation but the violation on Atencia's record was not expunged. (Doc. 90-3 at 66).

It is undisputed that Roska and Skinner reviewed no other documents except Atencia's Promotional Eligibility Review Packet in determining his application for promotion. (Doc. 90 at 5; Doc. 92 at 7). That packet did not refer to Atencia's internal complaint. (Doc. 90-3 at 100-118). Rather, it merely discussed the discipline Atencia received during the investigation into the inappropriate text messages, and did not note that Atencia was the one who filed the complaint that led to the investigation. (Doc. 90-3 at 102-103). Atencia has not offered evidence from which a jury could infer Roska and

---

[13] Atencia also complained to the EEOC, but that complaint could not have been the cause of his non-promotion because the EEOC charge was filed after he was denied promotion. (Doc. 89 at 14).

Skinner might otherwise have learned of the complaint.[14]   He therefore has failed to demonstrate a dispute of material fact regarding causation because he has not demonstrated a dispute regarding whether Roska and Skinner knew of the protected activity when they chose not to promote him.

### C. Equal Protection

Atencia's final claim is an Equal Protection Clause disparate treatment claim raised under 42 U.S.C. § 1983.  He alleges "MCSO has a practice of discriminating against people of Hispanic descent.  Officers who are denied a promotion under policy GC-12 are predominantly Hispanic.  Officers who are granted a promotion . . . [despite] their disqualification under GC-12 are predominantly White." (Doc. 91 at 16).  He alleges this caused MCSO not to promote him.  (Doc. 91 at 16).  Atencia also claims that a Court-appointed monitor in another case involving the MCSO, *Ortega Melendres v. Arpaio*, No. CV-07-02513-PHX-GMS (D. Ariz. Oct. 2, 2013), *aff'd in part vacated in part sub nom.*, *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), has noted the MCSO's inconsistent application of GC-12.  (Doc. 91 at 16; Doc. 92 at 123).

"Section 1983 is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred," such as the Equal Protection Clause. *Sampson v. Cty. of L.A. by and through L.A. Cty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1018 (9th Cir. 2020) (quotation marks and citation omitted).  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Pyler v. Doe*, 457 U.S. 202, 2016 (1982)).  "The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose." *Ballou v. McElvain*, 14 F.4th 1042, 1050 (9th Cir. 2021) (citation omitted), *amended on denial of reh'g en banc*, --- F.4th ---, 2022 WL

---

[14] Indeed, Atencia admits Roska and Skinner were not involved in the investigations related to his disciplinary violations and only contends they learned of the investigations from the Promotional Eligibility Review Packet.  (Doc. 92 at 7).  He has not claimed Roska and Skinner had notice of the internal complaint that gave rise to one of the investigations.

891791, at *5 (9th Cir. Mar. 24, 2022).  A plaintiff may establish discriminatory purpose by producing "'direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated' the defendant and that the defendant's action adversely affected the plaintiff in some way." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)).  But "[w]here direct evidence is unavailable, plaintiffs can, and frequently do, rely on the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*."  *Ballou*, 2022 WL 891791, at *5.

Atencia offers three items of evidence which he argues tend to show Defendants discriminated against him.  First, he points out that the independent monitor in *Melendres* has noted the inconsistent application of Policy GC-12 as recently as 2018.[15]  (Doc. 91 at 16).  For example, the monitor reported "concern[]" with the MCSO's promotion of persons with disciplinary histories.  (Doc. 92 at 133).  The statements about the MCSO by the monitor offered by Atencia do provide further historical pedigree to the MCSO's inconsistent application of Policy GC-12.  However, contrary to Atencia's assertion, the statements do not show "MCSO has a practice of discriminating against people of Hispanic descent."  (Doc. 91 at 16).  The monitor's statements offered by Atencia have nothing to do with race discrimination.  Rather, they merely show that exceptions to Policy GC-12 may have been distributed inconsistently in the past.  Moreover, *Melendres* concerned race discrimination in policing, not discrimination in employment.  *See Melendres*, 784 F.3d at 1257-58.

Second, Atencia offers an exhibit that he claims shows most officers denied promotion pursuant to Policy GC-12 are Hispanic.  (Doc. 91 at 16; Doc. 92 at 144).  The document offered by Atencia purports to demonstrate that eleven persons were denied promotion under Policy GC-12 between August 2019 and February 2020, and that four were White non-Hispanic and seven were Hispanic, including Atencia.  (Doc. 92 at 144).

---

[15] Defendants objected that Atencia failed to disclose some of the monitor's reports offered in support of Atencia's opposition to summary judgment.  (Doc. 93 at 3).  The Court will not consider the undisclosed reports for the reasons discussed in Part I.

1   Atencia has not identified the author of the document, its source, or its date of production.[16]

2   Third, Atencia notes that the majority of persons promoted despite violating Policy

3   GC-12 are White non-Hispanic. (Doc. 91 at 16). Of the 14 employees promoted despite

4   violating Policy GC-12 (either by having three or more sustained violations, one Category

5   6 violation, or both), eight were White non-Hispanic, four were Hispanic, one was Black

6   non-Hispanic, and one was Asian Pacific Islander. (Doc. 90-4 at 43-45).

7   For their part, Defendants argue "Plaintiff was denied a promotion based on four

8   sustained allegations of misconduct." (Doc. 89 at 15-16). Defendants claim that all

9   persons who were not promoted by exception from Policy GC-12 were worthy of exception

10  based on the individual facts in their promotional eligibility review packets. (Doc. 89 at

11  15). Defendants also note, of the ten employees promoted from 2017 to 2020 despite

12  having three or more sustained violations, six identified as non-White. (Doc. 89 at 16).

13  Defendants argue Roska and Skinner did not intend to discriminate against Atencia and

14  claim Roska and Skinner could not have discriminated against Atencia because they did

15  not know his race. (Doc. 93 at 10-11).

16  At best, Defendants arguments demonstrate the existence of a dispute of material

17  fact regarding whether MCSO discriminated against Atencia. It is genuinely disputed

18  whether Atencia was qualified for promotion by exception from Policy GC-12 and whether

19  Roska and Skinner intended to discriminate against Atencia based on his race by failing to

20

21

22

23

24  ----

[16] Defendants responded to Plaintiff's use of the document in their Reply in Support of Their Motion for Summary Judgment, but did not object to the document or contest its

25  admissibility. (Doc. 93 at 3) ("While the snapshot relied on by Plaintiff of employees who were denied a promotion does list more employees who self-identified as Hispanic, that is

26  only one piece of a very large puzzle."). Because Defendants did not object to the exhibit, the Court will assume for the purpose of summary judgment that the document would be

27  admissible at trial. Summary judgment is a trial on paper. As at trial, parties are expected to object to inadmissible evidence to present the issue to the Court. *See Ballen v. City of Redmond*, 466 F.3d 736, 745 (9th Cir. 2006) ("A trial court may only consider admissible

28  evidence in ruling on a motion for summary judgment."); LRCiv 7.2(m)(2) (setting forth the procedure for objections to admission of evidence on written motions).

grant him an exception.[17]  Summary judgment will therefore be denied.[18]

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 89) will be granted in part and denied in part. Plaintiff's Motion to Strike Portions of Defendants Reply in Support of Their Motion for Summary Judgment (Doc. 95) will be granted.

Accordingly,

**IT IS ORDERED** Defendants' Motion for Summary Judgment (Doc. 89) is **GRANTED IN PART**.  Summary judgment is granted in favor of Defendants pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's retaliation claim.  Summary judgment is denied on Plaintiff's claims for employment discrimination under Title VII and for violation of the Equal Protection Clause under 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** Plaintiff's Motion to Strike Portions of Defendants Reply in Support of Their Motion for Summary Judgment (Doc. 95) is **GRANTED**.

**IT IS FURTHER ORDERED** all Motions in Limine are due no later than **September 13, 2022**. Responses are due no later than **September 23, 2022**.  No replies are permitted unless ordered by the Court. Prior to filing any Motion in Limine, the parties must confer and discuss the contents of each proposed motion.  No Motion in Limine shall be filed if opposing party does not dispute the relief requested.

**IT IS FURTHER ORDERED** the Joint Proposed Pretrial Order is due no later than **October 4, 2022**.

---

[17] Defendants' argument that Roska and Skinner could not determine Atencia's race from the name in his review packet, Antonio Luis Atencia-Salome, appears implausible. Defendants use the websites, "Houseofnames.com" and "Behindthename.com," to support their argument that Roska and Skinner did not know Atencia's race or national origin (Doc. 93 at 10-11), but they offer no evidence that Roska and Skinner used the websites.  Even if it were plausible that Roska and Skinner would not have inferred, or at least been aware of the possibility, that a person named Antonio Luis Atencia-Salome is Hispanic, or there were evidence Roska and Skinner relied on the websites provided by the defense, Defendants have merely created a dispute of fact regarding what Roska and Skinner knew and intended when they did not promote Atencia.

[18] In addition to withstanding the motion for summary judgment with direct evidence of discrimination, Atencia likely could also show a dispute of material fact under the *McDonnell Douglas* test for the reasons set forth in Part II-A.  *See Ballou*, 2022 WL 891791, at *5.

**IT IS FURTHER ORDERED** the parties shall review the Court's standard Juror Questionnaire (available on the Court's website) and each party is to file **NO MORE THAN FIVE PROPOSED QUESTIONS** to be added to the standard Juror Questionnaire no later than **October 4, 2022**. Each proposed question shall stand alone and shall not contain sub-parts.

**IT IS FURTHER ORDERED** the parties shall file a very brief Joint Statement of the Case, that will be incorporated into the Juror Questionnaire, no later than **October 4, 2022**.

**IT IS FURTHER ORDERED** the parties shall file a second Joint Statement of the Case, of no more than two short paragraphs that will be read to the jury, no later than **October 18, 2022**.

**IT IS FURTHER ORDERED** no later than **October 18, 2022**, the parties shall file and submit via email (silver_chambers@azd.uscourts.gov) in Word format proposed Jury Instructions in compliance with the procedures available on the Court's website, including but not limited to: 1) a joint set of proposed jury instructions where they agree; 2) a separate set of instructions (one for each party) where the parties do not agree; and 3) legal authority supporting all proposed instructions whether the parties agree or not. Where the parties do not agree, the opposing party shall clearly state its objection to the proposed instruction and the proponent of the instruction shall provide a response in support of the proposed instruction.

**IT IS FURTHER ORDERED** the parties shall jointly file a proposed form of verdict, or if the parties do not agree, they are to separately file proposed forms of verdict no later than **October 18, 2022**.

**IT IS FURTHER ORDERED** no later than **October 18, 2022**, the parties shall deliver to chambers excerpts of the deposition testimony they propose to present as witnesses at trial, in compliance with the procedures available on the Court's website (found in Deposition Designation Procedure for Judge Silver). The Plaintiffs are to highlight in yellow the portions they wish to offer. and the Defendants are to highlight in

blue those portions they wish to offer.  If either party objects to any proposed testimony, a specific and concise objection (e.g., "Relevance, Rule 402") shall be placed in the margin adjacent to the proposed testimony.  The party proposing the testimony to which there is an objection is to respond to the objection that has been placed in the margin by the objecting party.

**IT IS FURTHER ORDERED** a final pretrial conference is set for **November 8, 2022 at 10 a.m.** at which time the Court will review with counsel the Juror Questionnaires. The parties shall meet and confer prior to the pretrial conference regarding the Juror Questionnaires and email to the Courtroom Deputy no later than noon on **November 7, 2022** a list of the jurors they agree should be stricken for cause, and any objections to jurors they do not agree should be stricken for cause.  **The parties shall not file this list.** The Court will rule on any disputed jurors at the final pretrial conference.

**The parties will be supplied a disk containing the questionnaires approximately one week prior to the final pretrial conference.  Counsel shall bring a copy of the questionnaires to the conference for review.  Counsel are required to return the disk to the Courtroom Deputy and destroy all copies of the questionnaires no later than the last day of trial.**

**IT IS FURTHER ORDERED** trial to a jury is set for **November 15, 2022 at 8:30 a.m.**

**IT IS FURTHER ORDERED** the parties shall comply with the Exhibit Procedures found on the Court's website at www.azd.uscourts.gov / Judges' Information / Orders, Forms & Procedures for Hon. Roslyn O. Silver.

Dated this 29th day of March, 2022.

Honorable Roslyn O. Silver
Senior United States District Judge